## J. W. SUMMERS, JR., et al. v. PEGGY CONGER et al.
### —307 S. W. (2d) 936.

Middle Section, Nashville. August 30, 1957.

Petition for Certiorari Denied September 6, 1957.

S. C. Lewis, N. A. Link, Dover, for appellants.

Howell & Howell, Dover, for appellees.

I

SHRIVER, J. Counsel for appellants in their well reasoned brief make a clear and concise statement of the case substantially as follows; The question at issue on this appeal is whether a certain farm should have been sold for partition, as sought by appellees and ordered by the trial Court, or whether it should be partitioned in kind, as sought by the appellants. The County Court, sustaining the Clerk's Report, ordered the land sold for partition, and it was so sold. From the order of sale and from the decree confirming the sale, the appellants perfected their appeal to this Court.

## The Pleadings

The original bill alleges that farm in question, containing 350 acres, excepting certain exclusions, is owned as tenants in common by parties to this suit in the following proportions: A six-eights (6/8) undivided interest by complainant Ruby L. Summers; a one-eighth (⅛) undivided interest by complainant J. W. Summers, Jr., and a one-eighth (⅛) undivided interest by defendant Peggy Summers (Conger); the said J. W. Summers, Jr.

and Ruby Summers, being brothers of the said Peggy Summers. The bill further avers that it would be manifestly to the advantage of the parties that the land be sold for partition instead of partitioned in kind and prays that the land be so sold.

The answer and cross-bill of the defendants (appellants) Peggy Summers Conger and her husband Maurice Conger denies that it would be manifestly to the advantage of the parties that said land be sold for partition but, on the contrary, alleges that it would be manifestly for the advantage of the parties that said land be partitioned instead of sold. Cross-complainants (appellants) further allege that it is particularly advantageous to them that said land be partitioned instead of sold, for several reasons, to wit, appellants own a tract of 3.3 acres of land adjoining the farm in question and reside on said tract. Their sole source of water supply is from a well on the farm from which they have underground pipes to their house. They allege that this water supply was arranged by agreement with parents of the appellant, the predecessors in title to the present owners of said large farm. They assert, as a further reason for desiring the setting apart to them of their part of the farm the fact that the 3.3 acres on which they reside is largely hill or bluff land and not adaptable to cultivation and that they desire and need their part of the farm for a garden and other cultivation.

An order of reference was made to the Clerk of the Court, the fourth item of which order was as follows;

"Whether the premises are so situated that partition thereof cannot be equitably made, or whether it would be manifestly to the advantage of the

parties that same should be sold instead of partitioned.''

In response to the said item of reference, and after extensive proof was heard by the Clerk, he reported as follows;

''As to the fourth item to be reported on I wish to report as follows; Since it is my understanding that it must be manifestly to the advantage of all parties concerned, and from the proof presented, the premises are so situated that an equal division of the lands and premises cannot be made satisfactorily, without harmful effect upon the remainder of the premises, therefore, after careful consideration of the evidence and testimony presented, I am of the opinion that a division in kind cannot be made manifestly to the best advantage of all concerned.''

The defendants filed a motion to set aside the Clerk's report as to item four and to re-refer the cause to the Master. It was insisted that said report was not responsive to the reference in that it apparently presupposed that a partition in kind would be had only if same was to the advantage of all the parties concerned, whereas, it was insisted that the correct interpretation of law is that a partition in kind will be ordered on due showing that same is to the manifest interest of any of the joint owners.

The plaintiffs agreed to a re-reference in order to clarify the report, said order of re-reference being as follows;

''It appears to the Court that some confusion exists as to whether or not the Clerk's Report in

the Fourth Item to be reported on is responsive to the question submitted to him. Now, therefore, in order to clarify and make certain his report it is ordered and directed by the Court that the Clerk report instanter on the following question" "Whether The Premises Are So Situated That Partition Thereof Cannot Be Equitably Made, Or Whether They Are of Such Description That It Would Be Manifestly To The Advantage Of The Parties That The Same Should Be Sold Instead of Partitioned."

In response to the foregoing re-reference the Clerk reported as follows;

"In compliance with the above order, I beg to report as follows; The premises are so situated that partition cannot be made. The premises are so situated and of such description that it would be manifestly to the advantage of the owners that the same should be sold, rather than partitioned."

Defendants (appellants) excepted to this report on several grounds.

Acting on the report the exceptions thereto and the whole record, the Court entered a decree in the cause (Tr. p. 30) on Oct. 23, 1956, which decree provided in part as follows;

"And after considering the depositions of the witnesses, maps and other proof filed in the cause the Court is of the opinion that the premises are so situated that partition thereof cannot be equitably made, and that it would be manifestly to the advantage of the owners that same should be sold instead of partitioned in kind.

"The exceptions filed by the defendants to the report of the Clerk are accordingly overruled, and the report is in all things confirmed. And the Court being satisfied that the facts are as set out in said report, the respective rights and interests of the parties are adjudged and settled accordingly, the share of each party being as reported by the Clerk.

"It is therefore ordered and decreed by the Court that said tract of land be sold for partition and that the Clerk sell same according to law at the Court House in Dover, Tennessee, on a credit of six and twelve months to the highest and best bidder, taking notes with security drawing interest from date and retaining lien on the land for security."

Pursuant to the foregoing decree a sale of the land was had and the report of sale was filed December 5, 1956, which report was confirmed by the Court by decree of December 11, 1956. (Tr. p. 40.)

From the foregoing decrees an appeal was prayed and perfected to this Court.

## II

### Assignments of Error

There are three assignments of error which, taken together, raise the question as to whether or not the land should have been ordered partitioned in kind rather than sold for partition. In other words, the question raised is whether or not the Court erred in confirming the report of the Clerk that it was to the manifest interest of the parties that the land be sold instead of partitioned in kind.

Assignment No. 3, is in the following language;

"The court erred in not ordering a partition in kind of said land. This was error because (1) the proof failed to show the advantage to all the parties of a sale rather than a partition in kind, and (2) the proof showed conclusively that such partition would be to the manifest advantage of one or more of the parties."

### III

We have here a concurrent finding of facts by the Clerk and the County Judge.

The first question that arises is as to the force and effect of this concurrent finding. In other words, is it of the same force and effect as a concurrent finding by the Master and the Chancellor in a Chancery proceeding. We think that it is.

Sec. 16-509, T. C. A., provides that the Circuit Court has concurrent jurisdiction with the Chancery and County Courts to allot dower, to make partition and distribution; and, for this purpose, to sell property, real or personal, if necessary, where manifestly to the interest of the parties. Sec. 16-613, T. C. A., likewise provides that the Chancery Court has concurrent jurisdiction with the Circuit and County Courts of proceedings for partition or sale of estates, etc.

Again Sec. 23-2106, T. C. A., provides "The county, circuit, or chancery courts have concurrent jurisdiction of partition cases under the provisions of this chapter, by bill for partition."

In Wilson v. Bogle, 95 Tenn. 290, 32 S. W. 386, 387, it was held;

"The concurrent finding of master and chancellor upon controverted questions of fact is entitled to the weight of the verdict of a jury, and the Court of Chancery Appeals errs by setting aside such finding, where there is any evidence to sustain it, and recommitting the matter for the taking of further evidence."

■ We conclude that the concurrent finding of the Clerk and the County Judge in a partition case has the same force and effect as a concurrent finding by the Master and the Chancellor in such case.

## IV

The record shows that the farm involved here, originally contained 350 acres but several tracts were sold or taken from it. The estimates of the witnesses as to the present size of the farm range from 175 to 250 acres.

Numerous witnesses were introduced on both sides, there being five witnesses on behalf of appellant who expressed the opinion that a division in kind could be equitably made and, generally, they stated that, if the appellant wanted her share of the farm, they thought she should have it and that the land could be divided so as to make an equitable distribution into eight shares.

Several witnesses for appellants gave conditional statements that they thought it could be divided by using money to equalize the values. There were a number of witnesses, about nine in all, who were of opinion that an equitable division in kind could not be made and they gave various reasons, some of them rather convincing.

All the buildings are close together along with a spring and well, on the Southwestern corner of the farm, and are on the only public road which touches the farm, said road forming the South boundary line thereof.

It appears that there is no water on the Northern part of the farm, which part is rough and hilly, and the only suitable places for buildings are on the Southern part.

There were various estimates as to the amount of timber on the place, some of the witnesses said that about half of the land is in timber, and some testified that there is good merchantable timber scattered all over the farm. One witness, J. K. Dickson, said that there are about 100 acres of timber. To the same effect is the testimony of E. R. Terrell.

It would seem that a preponderance of the evidence is to the effect that approximately half of the land is in timber and is rough and hilly and that something less than 50 acres is suitable for cultivation, while there is a substantial part of the land that is designated as "waste land".

There is considerable difference of opinion as to the value of the farm, but typical of the testimony in this regard is that of Earl Coppedge, County Surveyor, who estimated that the dwelling is worth $7,000, timber $8,000, the land $5,000, making a total of $20,000. Others estimated it variously from $18,000 to $30,000 in value.

The appellees insist that the farm is best suited for use as a one farm unit and, as such, is a good farm for stock purposes with barely enough cultivatable land to make it profitable for farming, and enough timber scattered over the place to grow a profit. It is touched by

one public road which forms the Southern boundary and the dwelling and all buildings are bunched together in the Southeast part of the farm where all sources of water also exist; that the Eastern and Western sides of the farm are surrounded by woodland belonging to other persons with no means of ingress and egress. Said appellees also insist that the maximum value of the farm is as a combined agricultural and stock farm.

It is also insisted that the witnesses for the appellants simply state opinions without reasons.

The record shows that appellees were the purchasers of the land at the sale for a price of $25,000, and it also shows that one of the purchasers, Ruby L. Summers, stated that he would not put a dollar in the purchase price if the land was to be divided. There was also the evidence of J. W. Summers, Jr., who stated that partition in kind would damage the farm from $4,000 to $5,000 and there is other evidence that it would reduce the price $3,000 to $4,000.

There is substantial evidence in the record that it is not a farm that would be valuable for cultivation alone, but that it is best suited for a stock farm with barely enough cultivatable land to support same.

Under these facts and circumstances, should this Court set aside the decree of the trial Court?

Sec. 23-2128, T. C. A., provides as follows:

"*Sale for division.*—Any person entitled to a partition of premises under the provisions of secs. 23-2101—23-2127, is equally entitled to have such premises sold for division, in the following cases;

"(1) If the premises are so situated that partition thereof cannot be made.

"(2) Where the premises are of such description that it would be manifestly to the advantage of the parties that same should be sold instead of partitioned."

In Wilson v. Bogle, supra, 95 Tenn. 290, 32 S. W. 386, the Court held that when the conditions prescribed by the statute authorizing a sale instead of a partition affirmatively appear, then a sale is a matter of absolute right.

In the Bogle case there was a tract of 5,000 acres and the order of sale for partition by the lower Court was affirmed and the judgment of the Court of Chancery Appeals was reversed on a showing that it was in the interest of the parties that said land be sold rather than divided in kind.

In Evans v. Evans, 42 Tenn. 143, it was decreed that a farm of 200 acres, provided with buildings, divided into fields for pasture, meadow, and arable land, with wood and water, all convenient for use as a single farm, and more valuable as a whole than if divided into five shares, be sold for division instead of being partitioned in kind.

In Bevins v. George, 36 Tenn. App. 308, 255 S. W. (2d) 409, among other things it is said that the mere fact that the land may be divided into equal parts, and thus partitioned equally among the cotenants, is not conclusive that a sale should not be ordered. If, by a partition, the value of all the shares would be much less, by reason of the partition, than the value of the tract as a whole, a

partition would be manifestly inequitable, and a sale would be decreed. Citing Branscomb v. Gillian, 55 Iowa 235, 7 N. W. 523.

The Court then goes on to say;

" 'The true question,' said Chancellor Walworth, 'to be decided by the master, under the statute, is whether the whole property, taken together, will be greatly injured, or diminished in value, if separated into parts, in the hands of different persons, according to their several rights and interests in the whole, in other words, whether the aggregate value of the several parts, when held by different individuals in severalty, would be materially less than the whole value of the property, if owned by one person. Clason v. Clason, 6 Paige (N. Y. 541), 545. A sale must be decreed, when necessary to enable the Court to divide the property upon the principle that "equality is equity." Higginbottom v. Short, 25 Miss. 160 (57 Am. [Dec.] 198).' " [36 Tenn. App. 308, 255 S. W. (2d) 411.]

■ Under the facts shown by the record and the applicable authorities, we are of opinion that the assignments of error should be overruled and the judgment of the trial Court affirmed. It is, accordingly, so ordered.

Affirmed.

Felts and Hickerson, JJ., concur.