William E. GOBER, Plaintiff/Appellee,

v.

George Robert BURRUS, M.D. and wife, Barbara Howard Burrus, Defendants/Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 17, 1986.

Permission to Appeal Denied by Supreme Court March 9, 1987.

Alan Mark Turk, Flynn and Associates, Nashville, for defendants/appellants.

Charles H. Warfield, Farris, Warfield & Kanaday, Nashville, for plaintiff/appellee.

## OPINION

KOCH, Judge.

This appeal involves a dispute between the two owners of a 192 acre farm near Culleoka concerning the manner in which the farm should be partitioned. One tenant filed a Tenn.Code Ann. § 29–27–201 action in the Chancery Court for Maury County requesting that the property be sold. The other tenant objected to the sale and insisted that the property should be partitioned in kind. The trial court conducted a bench trial and ordered the clerk and master to sell the property and to divide the proceeds between the parties.

The tenant favoring the partition of the property has perfected this appeal. He asserts that the trial court erred by determining that the sale of the property was manifestly to the advantage of both parties. The findings of the trial court are amply supported by the evidence, and, therefore, we affirm the judgment.

### I.

On July 1, 1977, the Reverend William E. Gober bought a 192 acre farm near Culleoka in Maury County from Joy Patricia Petty Rasbury and her husband, Victor Rasbury for $140,000. He paid Mr. and Mrs. Rasbury $35,000 and executed a $105,000 promissory note made payable to Mrs. Rasbury. The note became due and payable on July 1, 1983 and was secured by a deed of trust on the property.

The farm is bordered on the East by State Highway 50 and by a spur of the Louisville & Nashville Railroad. A modest home, a tobacco barn, and a livestock barn are located on the southern portion of the property. The home is served by city wa-

ter and a wet weather spring located on the southern portion of the property. The only access to the property is a gravel road leading from Highway 50 to the house. The character of the land is not uniform. Portions of it are arable while other portions are only fit for grazing. Other portions of the tract are wooded; however, not all the trees have commercial value.

On October 15, 1979, the Reverend Gober sold an undivided half interest in this property to Dr. and Mrs. George R. Burrus who were personal acquaintances. Dr. and Mrs. Burrus agreed to assume the remaining balance of the Reverend Gober's debt to Mrs. Rasbury as consideration for this conveyance. This debt amounted to $97,-000 at that time.

The two men believed that the property would be a good investment. They anticipated that it would appreciate in value as a result of the construction of the Columbia Dam nearby. They also envisioned that the property might be suitable for industrial purposes because of its proximity to the railroad line. They decided that the property could be used most profitably as a cow and calf farm while they awaited these developments.

The anticipated profitability of this venture failed to materialize. The construction of the Columbia Dam was halted long before the dam was completed. The value of farm land in the area, like most farm land, declined because of the changes in the economy. While the cow and calf operation had been profitable initially, it became unprofitable after the Reverend Gober and Dr. Burrus went into business together.

In November, 1982, Dr. Burrus brought an action against the Reverend Gober in the Chancery Court for Maury County based upon an alleged oral agreement entered into when he purchased his interest in the property. Dr. Burrus claimed that the Reverend Gober had agreed to permit him either to set aside the transaction or to

compel the sale of the property if, within the first five years, the venture proved to be unprofitable. The trial court heard the matter in September, 1984 and determined that the parties had not made this agreement. Thus, the trial court refused to order that the property be sold and that the proceeds be applied to Dr. Burrus' outstanding debt to Mrs. Rasbury.

The Reverend Gober then brought this action in February, 1985. Pursuant to Tenn.Code Ann. § 29–27–201,[1] he requested the trial court to order that the property be sold and that the net proceeds be divided equally between him and Dr. Burrus. Dr. Burrus insisted that the property should be partitioned in kind. The trial court heard the matter in June, 1985 and determined that selling the property was manifestly to the advantage of both parties.

## II.

The sole issue on this appeal is whether the trial court erred when it determined that selling the property was manifestly for the advantage of both parties. This Court will review the trial court's decision recognizing that trial courts have some discretion in these matters, *Yates v. Yates*, 571 S.W.2d 293, 296 (Tenn.1978), and that Tenn.R.App.P. 13(d) requires us to presume that the trial court's findings of fact are correct unless the evidence preponderates to the contrary.

██ A party seeking a partition by sale is entitled to have the property sold if it demonstrates either that the property cannot be partitioned in kind [Tenn.Code Ann. § 29–27–201(1)] or that the sale of the property is manifestly in the best interest of all the parties [Tenn.Code Ann. § 29–27–201(2)]. *Yates v. Yates*, 571 S.W.2d 293, 296 (Tenn.1978) and *Glenn v. Gresham*, 602 S.W.2d 256, 258 (Tenn.Ct.App.1980). The sale of the property is justified if ei-

---

1. Tenn.Code Ann. § 29–27–201 provides:

   Any person entitled to a partition of the premises, under the provisions of §§ 29–27–101—29–27–123, is equally entitled to have such premises sold for division, in the following cases:

   (1) If the premises are so situated that partition thereof cannot be made.

   (2) Where the premises are of such description that it would be manifestly for the advantage of the parties that the same should be sold instead of partitioned.

ther condition exists. Thus, the sale of the property may, in proper circumstances, be appropriate even if the land is physically capable of being partitioned. *Medley v. Medley*, 61 Tenn.App. 331, 350–51, 454 S.W.2d 142, 150–51 (1969).

The correctness of the trial court's decision rests upon its determination if that parties' interests are best served by ordering the sale of the property. The trial court considered and balanced the following factors in making its determination:

(1) the existing means of access to the property;[2]

(2) the character of the property and its potential uses;[3]

(3) The location of the existing improvements;[4]

(4) access to water and other similar utilities and services;[5]

(5) the potential value of a single large tract as compared to the value of smaller tracts;[6]

(6) the costs of partitioning the property compared with the costs of selling the property;[7] and

(7) the state of the title and the existence of any liens or encumbrances.[8]

We have determined that the trial court's consideration of each of these factors was appropriate and further that the trial court did not give inappropriate weight to any one factor over the others.

■ The appropriateness of the trial court's decision can be demonstrated without an exhaustive recitation of the contents of the record. The trial court found, and the parties appeared to agree, that if the property were partitioned, it would be divided along a line running approximately east to west perpendicular to Highway 50. All existing improvements including the house, the tobacco barn and the livestock barn would be located on the southern tract. The natural ponds and city water would serve only the southern tract. Therefore, the northern tract would be larger in size to compensate for the value of the improvements on the southern tract.

The northern tract would be wholly unimproved without additional expenditures. It would be separated from the highway by the railroad line and by a neighbor's property. It will also be landlocked unless access to the highway is provided through the southern tract. The only access to the property is located on the southern tract. Allowing access to the northern tract through the southern tract will tend to diminish the desirability of the southern tract.

The property is presently suitable for a cattle operation or for hay farming. These activities are presently unprofitable, and thus the prospects of a profitable operation following the partition are speculative at best. Any continued use of the property to raise cattle would require expenditures for a new fence, water and access to the highway. The cost of these improvements could easily exceed ten percent of the present value of the entire tract.

Dr. Burrus objects to the sale of the property although he does not seriously dispute these facts. He insists that selling

2. See *Summers v. Conger,* 43 Tenn.App. 286, 294, 307 S.W.2d 936, 939 (1957) and *Bevins v. George,* 36 Tenn.App. 308, 310, 255 S.W.2d 409, 410 (1952).

3. *Wilson v. Bogle,* 95 Tenn. 290, 294, 32 S.W. 386, 387 (1895) and *Hipshire v. Stapleton,* 57 Tenn.App. 339, 351, 418 S.W.2d 457, 462 (1966).

4. *Summers v. Conger,* 43 Tenn.App. 286, 295, 307 S.W.2d 936, 939 (1957).

5. *Wilson v. Bogle,* 95 Tenn. 289, 294, 32 S.W. 386, 387 (1895); and *Bevins v. George,* 36 Tenn. App. 308, 310, 255 S.W.2d 409, 410 (1952).

6. *Medley v. Medley,* 61 Tenn.App. 331, 351, 454 S.W.2d 142, 151 (1969); *Nicely v. Nicely,* 41 Tenn.App. 179, 185–86, 293 S.W.2d 30, 33–34

(1956); and *Easterly v. Haun,* 4 Tenn.App. 542, 548 (1927).

7. This factor has not been considered expressly by Tennessee courts. However, this Court recognized these costs in *Easterly v. Haun,* 4 Tenn. App. 542, 548 (1927). Other courts have held that this is a proper matter to consider. *Bailey v. Vaughn,* 375 So.2d 1054, 1058 (Miss.1979) and *Carter v. Ford,* 241 Miss. 511, 130 So.2d 852, 855 (1961). See also 59 Am.Jur.2d *Partition* § 118 (1971).

8. See 59 Am.Jur.2d *Partition* §§ 192 & 193 (1971) and 68 C.J.S. *Partition* § 114a. (1) (1950).

the property now, while its value is deflated, will cause him a serious financial loss because his current investment in the property [9] exceeds his anticipated share of the proceeds of the sale of the property. Dr. Burrus has invested approximately $127,000 in the property. He estimates that he would receive less than $56,000 if the property were sold now. While this may be the case, nothing in this record indicates that Dr. Burrus will be able to avoid this loss if the property is partitioned rather than sold. The value of his portion of the property, if it were partitioned, would be approximately $56,000. Dr. Burrus presented no proof concerning the circumstances under which the value of this parcel would more than double in value to enable him to recoup his investment. The preponderance of the proof is that the value of this property will not increase significantly in the foreseeable future.

A partition of property in kind is favored over a sale for division unless a sale is manifestly to the advantage of both parties. The purpose of this rule is to allow each owner to realize the full present value of his interest in the property. Thus, a court may direct that jointly owned property be sold rather than divided if it determines that the value to the parties of their shares of partitioned property is less than the parties' share of the proceeds if the property is sold.

The trial court determined, as we interpret its findings, that additional expenditures would be required in order to maintain the value of the property if it were partitioned. This finding, together with the trial court's findings concerning the character and potential use of the property, support the trial court's decision that selling the property was in the manifest best interests of the parties. The evidence preponderates in favor of finding that a sale of this property will better enable both Dr. Burrus and the Reverend Gober to realize the full present value of their interests in this property. Hoped for but unproven increases in the property's value are not sufficient to change this result.

## III.

The judgment of the trial court is affirmed. The case is remanded to the trial court for further appropriate proceedings. The costs of this appeal are taxed to George R. Burrus and Barbara H. Burrus and their surety for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.

---

9. Dr. Burrus testified at trial that he had already invested $127,000 in the property. This included $71,000 in principal and interest payments to Mrs. Rasbury and the $56,000 balance of the note to Mrs. Rasbury. Dr. Burrus has filed a Tenn.R.App.P. 14 motion to consider as a post judgment fact that the $56,000 indebtedness to Mrs. Rasbury has now been repaid. This motion is denied; however, consideration of this fact would not alter the result of this opinion.